**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ASHONTA L. DANIEL,

     *Plaintiff,*

CASE NO. 2:19-cv-12167

DISTRICT JUDGE DAVID M. LAWSON

*v.*     MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 11, 13)**

## I.    **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff Ashonta Daniel is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 11), be **DENIED**, and the Commissioner's Motion, (ECF No. 13), be **GRANTED.**

## II.    **REPORT**

### A.    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Supplemental Income Security Income Benefits (SSI). (ECF No. 3.) The case is before the Court upon the parties' cross-

1

motions for summary judgment. (ECF No. 11, 13.)

Plaintiff filed her application for SSI benefits on August 4, 2017, alleging that her disability began on November 1, 2007, but that date was amended to July 1, 2015 at the hearing before the ALJ. (ECF No. 9, PageID.219, 68.)[1] The Commissioner denied the claim. (ECF No. 9, PageID.122.) Plaintiff then requested a hearing before an ALJ, which was held on November 14, 2018. (ECF No. 9, PageID.63-101.) The ALJ issued a decision on February 12, 2019, finding Plaintiff not disabled during the relevant period. (ECF No. 9, PageID.48-58.) On June 17, 2019, the Appeals Council denied review, (ECF No. 9, PageID.33-36), and Plaintiff filed for judicial review of the final decision on July 24, 2019. (ECF No. 1.)

Plaintiff then filed the instant Motion for Summary Judgment on October 30, 2019 (ECF No. 11), the Commissioner countered with its own Motion on December 10, 2019, (ECF No. 13), and Plaintiff responded to the Commissioner's motion. (ECF No. 14.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a

---

[1] As noted by Defendant, Plaintiff also filed for DIB benefits but that claim was dismissed for failure to meet insured status requirements. (ECF No. 13, PageID.470, n.1.)

2

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your

impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d

640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other

jobs in significant numbers exist in the national economy that [the claimant] could perform

given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was

not disabled. (ECF No. 9, PageID.48-58.) At step one, the ALJ found that Plaintiff has not

engaged in substantial gainful activity since July 1, 2015, the amended alleged onset date.

(ECF No. 9, PageID.50.) At step two, the ALJ concluded that Plaintiff had the following

severe impairments: degenerative disc disease of the cervical spine, arthritis of L5-S1,

chronic migraines with Chiari malformation and small polyp within the right sphenoid

sinus, osteoarthritis of the bilateral knees with obesity, and degenerative joint disease of

the radiocarpal joints. (ECF No. 9, PageID.51.) The ALJ also decided, however, that these

impairments did not meet or medically equal a listed impairment at step three. (ECF No.

9, PageID.51-52.) Next, the ALJ found that Plaintiff had the residual functional capacity

(RFC) to perform

> the full range of sedentary work…except that the claimant can only
> occasionally climb stairs, crouch, crawl, kneel, stoop and bend; the claimant
> must avoid workplace hazards such as dangerous, moving machinery and
> unprotected heights so she is not able to climb ladders, ropes, or scaffolds; she
> can engage in frequent grasping/gross manipulation with bilateral upper
> extremities; and, the claimant is limited to low stress work, which is work that
> is self-paced and not at a production rate and, where the job duties are not
> interdependent with those of co-workers.

(ECF No. 9, PageID.52-56.) At step four, the ALJ found that Plaintiff has no past relevant

work. (ECF No. 9, PageID.56.) At step five, the ALJ found that Plaintiff's residual functional capacity (RFC) would allow her to perform jobs that existed in significant numbers in the national economy. (ECF No. 9, PageID.56-57.) This finding relied on the testimony of the Vocational Expert (VE). (*Id.*)

### E. Administrative Hearing and Function Reports

#### 1. Plaintiff's Testimony

At the hearing held on November 14, 2018, Plaintiff testified that she has lived with her Aunt for the past ten years in an upstairs bedroom where she has a refrigerator and microwave and she spends most of her time there. (ECF No. 9, PageID.69-70, 91-92.) Plaintiff has a Bachelor's Degree in criminal justice that she earned in 2004 but does not have a driver's license, instead relying on family to drive her places. (ECF No. 9, PageID.70-71, 85.) She has not worked since around 2003. (ECF No. 9, PageID.71.) In 2003, she worked as a medical records clerk for eight hours a day during her summer break from college. (ECF No. 9, PageID.72-73.) Plaintiff testified that her degenerative joint disease affects "my neck, my wrist, my lower spine, my feet and my knees." (ECF No. 9, PageID.75.) Plaintiff attended the hearing using a cane, and uses one when she goes out of her house and is uncertain of the distance she'll have to travel, but she acknowledged that no doctor had prescribed a cane for her. (ECF No. 9, PageID.75-76.) Plaintiff began having migraines in her "early 20s" and she indicated that they have gotten worse such that she experiences them 16 times in an average month. (ECF No. 9, PageID.76.) She stated that her "[s]evere migraine for me is a throbbing, a build up of pressure, tightness, I have nausea, vomiting, blurred vision, sensitivity to light, smell—scents" that "can last hours or

days." (ECF No. 9, PageID.76.) When asked whether anything seems to trigger her migraines, Plaintiff responded, "Nothing in particular seems to trigger it" but then when asked whether she had a computer or tablet at home, Plaintiff indicated that she had a tablet that she can use for "around 20 minutes" because after that, she will "start to have a migraine." (ECF No. 9, PageID.77.) Later Plaintiff indicated that spasms in her neck also trigger migraines. (ECF No. 9, PageID.80.)  Plaintiff takes Tylenol 3 for her migraines. (ECF No. 9, PageID.77.) Plaintiff tried but stopped using preventative medication because it either stopped working or she did not like the side effects. (ECF No. 9, PageID.78.)

Plaintiff also experiences pain from arthritis every day, she has done physical therapy for back pain and has had cortisone injections in her knees. (ECF No. 9, PageID.79.) Plaintiff also has swelling in her feet and elevates her feet in bed or a recliner for "two to three hours" a day. (ECF No. 9, PageID.77-78.) Hand tremors make it difficult for her to grip things. (ECF No. 9, PageID.81.)

Plaintiff is 5 feet 6 inches tall and weighs 330 pounds and she has hypertension that is controlled with medication. (ECF No. 9, PageID.81.) Plaintiff testified that she can sit for "about 30 minutes or so" before she needs to use pain reliever cream, an ice pack or to "position [her]self either in a recliner or in my adjustable bed." (ECF No. 9, PageID.82.) She can stand for "[m]aybe five or ten minutes" and she "really do[es]n't walk anywhere" but estimated she could walk for "[m]aybe half a block." (ECF No. 9, PageID.82.) Plaintiff stated she cannot lift more than 5 pounds because "it's painful" and that her Aunt does all the grocery shopping, cooking, laundry and housekeeping. (ECF No. 9, PageID.83, 92.)

Plaintiff takes care of her own personal hygiene but uses a shower chair and is not able to style her hair. (ECF No. 9, PageID.83-84.)

### 2.  The VE's Testimony

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's age, education and work experience who

> Would have the ability to perform the full range of we'll start with a light exertional job, but she does have some nonexertional limitations, she could only occasionally climb stairs, crouch or crawl or kneel or stoop or bends; she's not able to work around hazards, Mr. Topcik, so I don't want her climbing any ladders or ropes or scaffolding or working at unprotected heights or around dangerous moving machinery; she could use her upper extremities, her hands for grasping or gross manipulation on a frequent basis; I think she should work at a work station, so she's not walking around and she needs to be limited to work that's low stress, so she's working at her own pace; she's not working at a production rate or where her duties are interdependent with her coworkers.

(ECF No. 9, PageID.95.) The VE testified that such a person could perform jobs in the national economy such as inspector, DOT 727.687-062 (75,000 jobs); mail room sorter, DOT 209.687-026 (70,000 jobs); and information clerk, DOT 237.367-018 (75,000 jobs). (ECF No. 9, PageID.95-96.)

The ALJ then asked if the hypothetical remained the same but was limited to sedentary work whether any unskilled jobs would be available and the VE responded that there would be jobs as a sedentary sorter, DOT 521.687-086 (55,000 jobs), final assembler, DOT 713.687-018 (50,000 jobs), and document preparer, DOT 249.587-018 (64,000 jobs). When asked whether there would be "flexibility to work from a seated or a standing position" in these jobs, the VE responded that "[t]hey all could be done with a sit/stand option." (ECF No. 9, PageID.96.) If gross manipulation were limited to an occasional basis,

8

the jobs would be eliminated except surveillance system monitor, DOT 379.367-010 (15,000 jobs). (ECF No. 9, PageID.96.) The need to use an assistive device for standing or walking would not affect the sedentary jobs. (ECF No. 9, PageID.97.) Missing work more than twice a month would preclude employment as would having to leave the room to avoid lights for fifteen minutes out of every hour or elevating legs for two to three hours each workday. (ECF No. 9, PageID.98.) The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO) but that these publications do not address sit/stand options or use of hand-held assistive devices. (ECF No. 9, PageID.98-99.)

### 3.     Function Report

Plaintiff completed an adult function report indicating that personal care "can be challenging" because she takes "extra time to dress" and uses a ledge to help balance in the shower. (ECF No. 9, PageID.254.) Plaintiff does not need reminders and does "make sandwiches" and heat frozen vegetables but does not do any household chores or outdoor chores. (ECF No. 9, PageID.255.) Plaintiff "cannot stoop, squat, bend, twist, and [indecipherable] without pain." (ECF No. 9, PageID.256.) Plaintiff is able to ride in a car and shop online for "around 20 mins" twice a month and she has no difficulty handling finances. (ECF No. 9, PageID.256.) Plaintiff has no hobbies but does talk on the telephone weekly and attends doctor appointments. (ECF No. 9, PageID.257.) Plaintiff indicated that her ability to focus and follow instructions is affected during migraines. (ECF No. 9, PageID.258.) Plaintiff indicated her ability to get along with authority figures is "excellent" and that she has never been fired or laid off from a job due to problems getting along with

others. (ECF No. 9, PageID.259.) Plaintiff stated that she did not handle stress well because "stress can cause migraines." (ECF No. 9, PageID.259.) Plaintiff uses a cane when she needs "balance and support." (ECF No. 9, PageID.259.)

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, distinguish between acceptable medical sources, medical sources and nonmedical sources.[2] An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed Psychologist, which includes:

   (i) A licensed or certified psychologist at the independent practice level; or
   (ii) A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a

---

[2] The new regulations also expressly rescind SSR 96-2p, SSR 96-50, SSR 96-6p, and SSR 06-03p. 82 Fed. Reg. 5844-01, 5844.

> Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;
>
> (6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];
>
> (7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or
>
> (8) Licensed Physician Assistant for impairments within his or her licensed scope of practice [])."

20 C.F.R. § 404.1502(a).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id*. § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id*. § 404.1502(e). "This includes, but is not limited to: (1) You; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id*.

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id*. § 404.1520c(a). "The most important

factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id*.

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id*. § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id*. § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id*. § 404.1520c(c)(3). This factor will include the analysis of:

> (i)   Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);
>
> (ii)  Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

     (iii)   Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (iv)   Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (v)   Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id*. The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id*. § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id*. Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id*.

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record." *Id.* § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the

14

factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*.

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id*. § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id*. § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id*. § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

> (i)     Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)   Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)  Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(vi)   Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(vii)  Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(viii) Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id*. § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id*. § 404.1504. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id*. The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id*.

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id*. § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id*. Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood,

thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id*. § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id*. § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id*. § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as

consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id*. § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id*. § 404.1529(a). The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id*.

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id*. § 404.1529(c)(3).

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account…We will

18

consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.* The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion;
(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;
(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
(5) The treatment involves amputation of an extremity, or major part of an extremity.

*Id*. § 404.1530(c).

### G.   Arguments and Analysis

Plaintiff makes two arguments: (1) "The ALJ substituted her own medical judgment for that of the treating and evaluating physicians" and (2) "The ALJ failed to consider functional limitations resulting from all of Plaintiff's severe impairments[.]" (ECF No. 11, PageID.456, 460.)

### 1.  Medical Sources

Plaintiff first argues that the ALJ acted improperly by fashioning an RFC that did not mirror either Plaintiff's treating physician (Dr. Williams) or the state agency physician (Dr. Douglass). (ECF No. 11, PageID.456.) Defendant notes the relevant differences between the opinions and the ALJ and summarizes that as to sitting, the ALJ determined Plaintiff could sit for 6 hours, Dr. Douglass opined Plaintiff could sit for 4 hours and Dr. Williams opined Plaintiff could sit for one hour in an 8-hour workday. As to grasping, the ALJ determined Plaintiff could grasp frequently, Dr. Douglass opined Plaintiff was unlimited in that ability, and Dr. Williams opined that Plaintiff could grasp for 30 minutes total in an 8-hour workday. (ECF No. 13, PageID.474.)

Plaintiff relies on case law from other Circuits (ECF No. 11, PageID.457) but as noted by the Defendant, "No bright-line rule exists on our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F.App'x 220, 226 (6th Cir. 2019).

Further, "the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion." *Tucker*, 775 F. App'x at 226. Thus, Plaintiff's bald argument that the ALJ erred because his RFC finding did not match any physician's opinion is unpersuasive. Although not argued by Plaintiff, a survey of the ALJ's opinion reveals that the ALJ adequately provided that connection between the evidence relied on and the conclusion reached as to the two contested RFC findings regarding sitting and grasping. (ECF No. 9, PageID.55-56.)

Plaintiff also argues that the ALJ erred by not giving controlling weight to Plaintiff's treating physician, Dr. Williams. (ECF No. 11, PageID.458-460.) However, as noted by Defendant, Plaintiff's applications were filed after the effective date of the new regulations that eliminate the treating physician rule; thus, this argument no longer persuades. (ECF No. 13, PageID.475-477.) Defendant goes on to contend that the ALJ's findings properly comported with all that is required of an ALJ under the new regulations. (ECF No. 13, PageID.477-483.)

It appears that the ALJ was aware of and applied the new regulations in her decision. The ALJ indicated that she "fully considered the medical opinions and prior administrative medical findings" but that she "will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from a claimant's own medical sources." (ECF No. 9, PageID.55.) This language reiterates the amended language found in 20 C.F.R. § 404.1520c(a). The ALJ also noted, in considering Dr. Williams' opinion that Plaintiff "cannot work full time due to severe pain and immobility" that this opinion is "on an issue

21

that exceeds the expertise of the physician and is reserved to the Commissioner" thus finding the opinion "considered" but "not persuasive or of special significance." (ECF No. 9, PageID.55.) In addition, the ALJ concluded that "Dr. Williams; limitations regarding the claimant's physical abilities are inconsistent with several of his treatment notes indicating normal findings and years of conservative treatment." (*Id*.) These findings also mirror the required analysis under the new regulations. § 404.1520b(c)(3)(i); § 404.1520b(c)(2). I further suggest that these findings are supported by the medical records provided by Dr. Williams. In addition to the years of conservative treatment, Dr. Williams consistently noted normal findings as to Plaintiff's psychiatric status, muscle tone and strength, gait and station, neurological and cardiovascular systems, with the exception of hypertension and some mention during later visits of hypertrophic changes in the knees. (ECF No. 9, PageID.341, 344, 348-349, 352-353, 356-357, 360-361, 363-364, 367, 369, 371, 374-375, 376, 380, 382, 385, and 387.)

As to the State Agency physician, Dr. Douglass, the ALJ explained that "[a]lthough the undersigned is persuaded that the general categories of restriction posited by this physician are supported, this opinion is not adopted because the consultant did not consider all of the hearing level evidence" because "[a]dditional medical records have been admitted into the record since the consultant rendered his opinion in October 2017." (ECF No. 9, PageID.55.) The new regulations place "supportability" as the first factor to be considered when assessing a medical source opinion. § 404.1520c(c)(1). In addition, the regulations specifically state that "[w]hen we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the

22

medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id*. § 404.1520c(c)(5).

I therefore suggest that the ALJ utilized the proper method for analyzing medical sources under the new regulations and committed no error.

### 2. Functional limitations and severe impairments

Here, Plaintiff contends that the ALJ found Plaintiff had severe impairments, including migraines, but that the ALJ failed to incorporate nonexertional limitations caused by her migraines. (ECF No. 11, PageID.460-462.) Plaintiff explains that "[t]here is nothing in the record to suggest that the Plaintiff experiences migraine headaches only when she is under stress…[t]he only trigger identified by Plaintiff is that she avoids using her tablet for more than twenty minutes at a time." (ECF No. 11, PageID.461.) Plaintiff did mention avoiding using her tablet for more than 20 minutes at a time at the administrative hearing (ECF No. 9, PageID.77), and she also mentioned that spasms in her neck also trigger migraines. (ECF No. 9, PageID.80.)  However, there is evidence in the record to support the ALJ's limitation to low-stress work to assist in avoiding migraines because in her adult function report, Plaintiff indicated that "stress can cause migraines." (ECF No. 9, PageID.259.) Thus, Plaintiff's assertion that there is nothing in the record to connect stress with migraines is easily debunked.

### H.    Conclusion

For these reasons, I conclude that substantial evidence supports the ALJ's decision and therefore recommend that Plaintiff's Motion for Summary Judgment, (ECF No. 11),

be **DENIED**, and the Commissioner's Motion, (ECF No. 13), be **GRANTED.**

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Date:  April 30, 2020

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 30, 2020

By s/Kristen Castaneda
Case Manager